Jasen, J. (dissenting).
The resolution of this case turns upon whether the limited police search of appellant’s raincoat pocket was a reasonable response to the situation then confronted. I believe that it was and, accordingly, would affirm the order of the Appellate Division.
At 10:15 p.m. on February 25, 1971, three New York City police officers assigned to the Narcotics Division arrived at a designated premises on Staten Island to execute a properly issued search warrant directed at one of the apartments in the building. When the police entered the apartment, five persons were inside. On the top of a stereo cabinet, the officers found 103 tinfoil packets containing a white powder alleged to be heroin. As the officers were completing their authorized search, there came a knock on the door. The policemen, fearing danger, drew their service revolvers but kept their weapons pointed down at the floor. Patrolman Lotito opened the door and the appellant, a man not previously known to the officers, entered the apartment. Appellant was carrying a white raincoat draped over his left forearm. The officers identified themselves, explained their purpose and requested appellant to identify himself. Appellant agreed to display *975 some identification. He then tossed his raincoat toward a chair in the living room. The coat fell short of its intended destination and landed, with a metallic thud, on the bare wooden floor of the apartment. Detective Feeley picked up the raincoat, touched the outside pocket and felt the handle of a gun. He reached into the pocket and removed a loaded Luger automatic pistol, with one shell in its firing chamber. Thereupon the appellant was arrested and charged with the illegal possession of this dangerous weapon. The motion to' suppress having been denied, appellant pleaded guilty. On appeal he contends that the search of his raincoat by the police was unconstitutional and that the weapon should have been suppressed.
In analyzing the issue before us, we must take into account the standard by which police searches are measured under the Fourth Amendment, and, that is, of reasonableness. (People v Kreichman, 37 NY2d 693, 697.) In each case where the validity of a search is challenged, the test is whether the facts available to the officer at the time of the search would warrant a person of reasonable caution in believing that the action was appropriate. (People v Moore, 32 NY2d 67, 69, cert den 414 US 1011.) Here, the fact that appellant entered the premises did not, in itself, authorize the officers to search him. Appellant was not named in the warrant and, by his entrance onto the scene alone, the officers did not have reasonable cause to believe that he had committed a crime. (People v Smith, 21 NY2d 698, 670.) However, the officers were certainly entitled, if not mandated, to make some further inquiry of the appellant and to ascertain the reason for his presence on the premises. When the fall of appellant’s raincoat produced a metallic thud, it was reasonable, under the circumstances, for the officers to investigate the cause of the noise emanating from the fall of the raincoat to the floor. Appellant was an unidentified intruder in an apartment that was the target of a valid search for drugs warrant. At the time the raincoat was thrown, the police, who were already apprehensive and on guard, did not know whether appellant was an innocent bystander or whether he was a confederate in a criminal enterprise known to be operating out of the apartment. The sound, which could have only been produced by a fairly large metal object, and the haste with which appellant discarded his raincoat upon entering the apartment and seeing police officers on the premises, gave the police additional cause to *976 suspect that the raincoat contained contraband. Significantly, the officers did not then subject the defendant to a full-scale search, nor did they commence a detailed search of the raincoat and its contents. Rather, the officer simply felt the outside of the raincoat in order to ascertain the outline of the metal object. In my view, there was nothing unreasonable about this limited police response. The need for investigation was substantial and the invasion of privacy minimal. (People v Moore, 32 NY2d 67, 69, supra.) It was not until the officer felt the handle of a gun that the inside of the pocket was searched. The appellant’s conduct was furtive and the officers, on the scene of known large-scale criminal activity, were fearful of danger. (See People v Ludwig, 38 NY2d 970.) Under the facts and circumstances, I cannot but conclude that the actions of the officers were reasonable responses to the situation and entailed no violation of the constitutional protections against unreasonable searches and seizures. Accordingly, I dissent.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur in memorandum; Judge Jasen dissents and votes to affirm in a separate opinion.
Order reversed, etc.