Opinion issued August 31, 2005.










     





In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00167-CR




CLAYTON DORNELL JEFFERSON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 867967




MEMORANDUM OPINION

          A jury found appellant, Clayton Dornell Jefferson, guilty of aggravated robbery
and assessed punishment at 40 years’ confinement. In his first issue, appellant
contends that the trial court erred in admitting his second written statement because
he did not knowingly and intelligently waive his right to counsel. In his second and
third issues, appellant contends that the trial court erred in admitting evidence
because it was irrelevant and any probative value of the extraneous offense was
substantially outweighed by unfair prejudice, undue delay, and confusion. In his
fourth and fifth issues, appellant argues that the evidence was legally and factually
insufficient to support his conviction. We affirm.
Factual and Procedural Background
          On January 24, 2001, Houston Police Officer Brian Harris observed two men
inside a car, which was parked in a traffic lane at the corner of Chimney Rock and
Orem in Harris County. Both men, Charles McCormick and Hershell Willie, had
been shot to death. When Harris approached the car, he discovered that the trunk was
open, the inside was bloody, and there were several bullet casings on the floor. 
McCormick’s pockets were empty and had been turned inside out. Police found
$18,200 inside Willie’s jacket pocket. Suspecting that this incident was the result of
a “drug rip-off gone bad,” Harris called for a drug dog to determine the presence of 
narcotics. The dog alerted the officers to the trunk of the car, confirming that the
incident was potentially drug-related.
          After further investigation, Harris spoke to Jamelda Jenkins. Jenkins told
Harris that Trudy Cooper, an acquaintance, was planning to commit a robbery with
appellant. Police officers located appellant, and he agreed to go to the police station
and speak with the officers. During the first interview, Harris told appellant that he
was free to leave at any time. Before appellant made his first written statement,
Harris read appellant his legal rights, which appellant waived.
          In this first statement, appellant acknowledged that he knew Keelin Preston.
He explained that Preston took care of appellant and provided him and his
companion, Eric Henderson, a place to live. Appellant stated that he did “odd jobs”
for Preston. Appellant also acknowledged that he knew Cooper and explained that
Cooper and Preston were involved in an “intimate relationship.” Appellant explained
that, on the day of the robbery, Preston asked appellant and Henderson to meet him
at the corner of Orem and Chimney Rock. Appellant explained that he did not
question Preston and just “did what [Preston] asked him to do.” Appellant denied
being present in the car when Preston robbed and murdered McCormick and Willie. 
He further maintained that he did not know about Preston’s plan to rob McCormick
and Willie. After giving the first statement, appellant left and agreed to return to the
police station the next day. Appellant failed to show up the next day. Instead,
appellant called Harris and explained that he did not return to the police station
because he feared that he would be arrested. Harris told appellant that he had a
warrant for his arrest, and appellant agreed to surrender.
          Appellant never surrendered, and the police eventually found him hiding in his
grandmother’s attic. Following his arrest, appellant agreed to give a second written
statement. Before making the statement, appellant was read his legal rights and
waived each one of them. In his second statement, appellant admitted that Preston
told him about his plan to rob McCormick and Willie. He insisted, however, that he
did not know the full details of Preston’s plan. Appellant also mentioned that he
knew McCormick from a previous drug transaction. Appellant stated that Preston
asked him to ride in the backseat of McCormick’s car with him, and Williams was in
the passenger seat. Preston told Henderson to meet them at the corner of Orem and
Chimney Rock. Appellant further explained that, when they reached the location
where Henderson was waiting for them, Preston shot McCormick and Willie in the
back of the head. After he killed them, Preston stole some money, which was hidden
inside a cereal box in the trunk of the car. Appellant and Preston then jumped into
Henderson’s car and fled the scene. Preston gave appellant $900 of the stolen money.
          Before trial, appellant filed a motion to suppress both of his written statements. 
Following a hearing, the trial court denied appellant’s motion to suppress. Appellant
pleaded not guilty, and the jury found him guilty and assessed punishment at 40
years’ confinement.Motion to Suppress
          Appellant contends that the trial court erred by denying his motion to suppress 
his second statement because he did not knowingly and voluntarily waive his right
to counsel. Specifically, appellant asserts that he did not request an attorney because
he believed that his request would not be granted because the police “discouraged”
him from requesting an attorney during his first interview.          
          In reviewing the trial court’s ruling on the motion to suppress a statement, we
apply a bifurcated standard of review. Carmouche v. State, 10 S.W.3d 323, 327 (Tex.
Crim. App. 2000). We give almost total deference to the trial court’s determination
of historical facts that depend on credibility, while we conduct a de novo review of
the trial court’s application of the law to the facts. Id.
          Where, as here, there are no findings of fact, we view the evidence in the light
most favorable to the trial court’s ruling and assume that the trial court made implicit
findings of fact that support its ruling as long as those findings are supported by the
record. See State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). If the trial
court’s decision is correct on any theory of law applicable to the case, the decision
will be upheld. Id. at 856.
          At the hearing on the motion to suppress, appellant testified that he tried to call
his attorney from his cellular phone as the officers drove him to the police station for
the first interview, but the officers told him that he “didn’t need a lawyer.” Appellant
also testified that, during the first interview, Harris read appellant his legal rights
before questioning him. Appellant indicated that he understood his rights and
initialed his waiver of each one. Appellant did not request counsel during the first
interview. Additionally, Walker testified that, while he had previously represented
appellant, he was not hired to represent appellant in this case.
          In response, Harris testified for the State. Harris explained that he read
appellant his rights under article 38.22 of the Code of Criminal Procedure before
appellant made the second statement. He further explained that appellant understood
his rights and expressly waived each of them. Harris also testified that appellant did
not request a lawyer before making the second statement. Moreover, Officer Mayer
read appellant his legal rights and reviewed appellant’s second statement with him. 
          In a motion to suppress, the fact finder is the sole judge of the witnesses’
credibility and may accept or reject any or all of the witnesses’ testimony. See Taylor
v. State, 945 S.W.2d 295, 297 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d). 
Here, the record provides sufficient evidence to support the trial court’s finding that
appellant’s second statement was voluntary. See, e.g., Ross, 32 S.W.3d at 855. 
Accordingly, we hold that the trial court did not abuse its discretion by denying
appellant’s motion to suppress his second written statement.
          We overrule appellant’s first issue.Extraneous Offense
          In his second and third issues, appellant contends that the trial court erred in
admitting evidence regarding an extraneous drug offense because the extraneous
offense was not relevant to any issue of the case and the probative value of the
extraneous offense was substantially outweighed by unfair prejudice, undue delay,
and confusion. 
          The admissibility of an extraneous offense is reviewed under an abuse of
discretion standard. See Montgomery v. State, 810 S.W.2d 372, 390 (Tex. Crim. App.
1990). We should give great deference to the trial court’s finding; and as long as the
trial court’s ruling is within the “zone of reasonable disagreement,” we should not
disturb the trial court’s ruling. Id. Relevancy
          First, appellant argues that the trial court erred by admitting his second written 
statement, which contained evidence of an extraneous offense that was not relevant
to any issue of the present case. At trial, appellant’s counsel objected to the portion
of the statement, which mentioned a prior drug transaction involving McCormick. 
After making this objection, appellant’s counsel solicited the same testimony from
appellant on direct examination.


 The exchange occurred as follows:
Defense counsel:   Okay. Okay. Now, in your second statement, you refer to an incident that occurred some weeks before
this occurrence?
 
Appellant:              That’s correct.
 
Defense counsel:   And can you tell us what that was?
 
Appellant:              Well, Keelin had called me. I’m not sure what time
it was, but Keelin called me and asked me to take a
friend of his to the southeast called the South Park to
let him meet a couple of his friends. And he wanted
me to take him there to meet his friends and bring
him back.
 
Defense Counsel:  Okay.
 
Appellant:              And I was like, “Okay.”
 
Defense counsel:   And you did that?
 
Appellant:              That’s correct.
 
Defense counsel:   And your statement says that this man had bought a
ki [kilogram] from Keelin and the guy did not have
his money. So, you took him to South Park to pick
up his money; is that true?
 
Appellant:              That’s true.
 
Defense counsel:   All right, sir. And that man that you took to South
Park to pick up his money, is he one of the people-one of the victims in this case?
. . . 
 
Appellant:              Yes, that would be the driver.
 
Defense counsel:   So, you had – you met the driver before on a
previous occasion; is that correct?
 
Appellant:              Yes. I met him once.
 
Defense counsel:   And did [he conduct] a transaction with Keelin?
 
Appellant:              I’m sure they did do a transaction, but I wasn’t there. 
I just took the guy to South Park and brought him
back and dropped him off at Trudy’s house and I
left. And Keelin told me later that was what it was
for.
Defense counsel:   So, did he pick up the money?
 
Appellant:              He told me the whole scenario about what had
happened. He told me that the guy didn’t have the
money and he wanted me to take him over there, but
he didn’t tell me anything before. He just told me
afterwards.
 
Defense counsel:   Okay. So – but what you learned from all of that is
that there was a drug transaction that went down
between Keelin and Mr. McCormick?
 
Appellant:              Yes. That is what I learned, yes.
 
          “An extraneous offense is not admissible simply as character evidence to show
that the accused acted in conformity.” Tex. R. Evid. 404(b). An extraneous offense
is admissible, however, where it logically serves to make more or less probable an
evidentiary fact necessary to the State’s case. Montgomery, 810 S.W.2d at 387. 
Moreover, an extraneous offense is admissible to prove motive, opportunity, intent,
preparation, plan knowledge, identity, or absence of mistake or accident. Tex. R.
Evid. 404(b); see also Montgomery, 810 S.W.2d at 387.
          Here, appellant testified that he participated in a prior drug transaction where
McCormick purchased a kilogram of cocaine from Preston. Appellant explained that
McCormick did not have the money to pay for the cocaine, so Preston asked him to
drive McCormick to South Park to pick up the money. We conclude that this
evidence is sufficient to prove that appellant had a motive to assist Preston in the
robbery. From his participation in the previous drug transaction, it was reasonable
for the jury to infer that appellant knew or should have known that McCormick and
Willie would have cash on them. Accordingly, we hold that the trial court did not err
in admitting the extraneous offense because it was relevant to prove motive. See Tex.
R. Evid. 404(b); see also Montgomery, 810 S.W.2d at 387.
Unfair Prejudice
          Next, appellant argues that the trial court erred by admitting evidence of the
extraneous offense, where the probative value of the extraneous offense was
substantially outweighed by unfair prejudice, undue delay, and confusion. See Tex.
R. Evid. 403(b). 
          The general prerequisite to presenting a complaint for review is a showing in
the record that (1) the complaint was made to the trial court by a request, objection,
or motion that was timely and sufficiently specific to make the trial court aware of thegrounds of complaint and (2) the trial court ruled adversely (or refused to rule, despite
objection). Tucker v. State, 990 S.W.2d 261, 262 ( Tex. Crim. App. 1999) (en banc). 
Absent any objection, any error in admission of an extraneous offense is waived. 
Blue v. State, 41 S.W. 3d 129, 131 (Tex. Crim. App. 2000). If counsel does not
pursue the objection to an adverse ruling, error is not preserved. Tex. R. App. P.
33.1(a)(1); see also Tucker, 990 S.W.2d at 262.In this case, appellant’s counsel made the following objection:
Well, for the record, we specifically object to [appellant’s] second
statement because we believe it relates back to [appellant’s] first
statement and the actions of the detective with the defendant at that time
and not warning him and refusing him an attorney based on the [motion
to suppress] hearing we had. So, that – and the second statement the
defendant was conditioned – preconditioned not to expect to be given
a lawyer if he asked for one, and for that reason . . . the second statement
should be excluded.
 
Appellant’s counsel also asked the trial court to redact the reference to the extraneous
drug offense. The trial court overruled the objection and denied the request to redact
the extraneous offense. To preserve error, an objection must be timely, specific, and
pursued to an adverse ruling. See Geuder v. State, 115 S.W.3d 11, 13 (Tex. Crim.
App. 2003). Because appellant did not specifically object to the statement on Rule
403(b) grounds, he did not preserve these points of error on appeal. Tex. R. App. P.
33.1(a)(1). 
          We overrule appellant’s second and third issues.
 
Legal and Factual Sufficiency
          In his fourth and fifth issues, appellant argues that the evidence was legally and
factually insufficient to support his conviction. Specifically, appellant contends that
the evidence was insufficient to support appellant’s conviction, as a principal or
under the law of parties, where the evidence failed to establish that appellant had
committed any act with the intent to promote the alleged robbery offense.
          When conducting a legal-sufficiency review, we view the evidence in the light
most favorable to the verdict to determine whether any rational fact finder could have
found the essential elements of the offense beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152, 155
(Tex. App.—Houston [1st Dist.] 1997, no pet.). Although a legal-sufficiency analysis
entails a consideration of all evidence presented at trial, we may neither re-weigh the
evidence nor substitute our judgment for the jury’s. King, 29 S.W.3d at 562. The
jury, as trier of fact, is the sole judge of the credibility of witnesses and may believe
or disbelieve all or any part of a witness’s testimony. Reece v. State, 878 S.W.2d 320,
325 (Tex. App.—Houston [1st Dist.] 1994, no pet.).                                          
          In a factual-sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof, beyond-a-reasonable-doubt, could not have been met. See Zuniga
v. State, 144 S.W.3d 477, 483 (Tex. Crim. App. 2004). We must also employ
appropriate deference so that we do not substitute our judgment for that of the fact
finder. Id. Our evaluation should not intrude upon the fact finder’s role as the sole
judge of the weight and credibility given to any witness’s testimony. Cain v. State,
958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Because it turns on an evaluation of
credibility and demeanor, it is within the province of the fact finder to determine what
weight to give contradictory testimonial evidence. Id. at 408-09. The fact finder is
entitled to judge the credibility of the witnesses and may choose to believe all, some,
or none of the testimony presented. Id. at 407.Here, appellant was charged with aggravated robbery. To prevail on the charge
of aggravated robbery, the State had to prove that appellant committed a robbery and
used or exhibited a deadly weapon. See Tex. Pen. Code Ann. § 29.03(a)(2) (Vernon
2003). The trial court’s charge authorized the jury to find appellant guilty either as
a principal or under the law of parties. Under the law of parties, a person is
criminally responsible for the offense committed by another if, acting with intent to
promote or assist the commission of the offense, he solicits, encourages, directs, aids,
or attempts to aid the other person to commit the offense. See Tex. Pen. Code Ann.
§ 7.02 (a)(2) (Vernon 2003). Although the mere presence at the scene of a crime
scene is not alone sufficient to make an individual vicariously liable for a crime, it is
a circumstance that, when combined with other facts, may suffice to show that the
accused was a participant. See Ware v. State, 467 S.W.2d 256, 258 (Tex. Crim. App.
1971). The law of parties applies to the offense of aggravated robbery. See Johnson
v. State, 32 S.W.3d 388, 393-94 (Tex. App.—Houston [1st Dist.] 2000, no pet.). 
          In his second statement, appellant admitted that he knew about Preston’s plan
to rob McCormick and Willie. Appellant also stated that he agreed to accompany
Preston during the robbery. Because appellant knew Preston was planning to rob
McCormick and Willie, a jury could reasonably infer that appellant “encouraged” or
“assisted” Preston by accompanying him during the robbery. See Tex. Pen. Code
Ann. § 7.02 (a)(2). In addition, appellant received $900 of the stolen money. This
financial gain is evidence that appellant acted as an active participant in the alleged
robbery. 
          During his testimony, however, appellant denied knowing the full details of
Preston’s plan to rob McCormick and Willie. Appellant also testified that his second
statement might have been altered or changed because “[Harris] was typing so fast.” 
Finally, appellant admitted that he had lied several times during his first interview
with Harris.
          Viewing all of the evidence in the light most favorable to the verdict, we
conclude that a rational fact finder could have found the essential elements of the
offense beyond a reasonable doubt. See King, 29 S.W.3d at 562. Viewing the
evidence in a neutral light, we also conclude that the evidence supporting appellant’s
conviction is not too weak to support the finding of guilt beyond a reasonable doubt;
nor was the contrary evidence so strong that the beyond-a-reasonable-doubt standard
could not have been met. See Zuniga, 144 S.W.3d at 483. We hold that the evidence
is both legally and factually sufficient to support appellant’s conviction.
          We overrule appellant’s fourth and fifth issues.

Conclusion
          We affirm the judgment of the trial court.
 


                                                             George C. Hanks, Jr.
                                                             Justice

 
Panel consists of Chief Justice Radack and Justices Jennings and Hanks. 
Justice Jennings, concurring.
Do not publish. Tex. R. App. P. 47.4.